659 So.2d 1196 (1995)
The STATE of Florida, Appellant,
v.
Wayne BOCK, Appellee.
No. 95-1253.
District Court of Appeal of Florida, Third District.
August 23, 1995.
Rehearing Denied September 20, 1995.
Robert A. Butterworth, Attorney General, and Mark C. Katzef, Assistant Attorney General, for petitioner.
Robert S. Reiff and H. Scott Fingerhut, Miami, for respondent.
*1197 Before SCHWARTZ, C.J., and BASKIN and LEVY, JJ.
LEVY, Judge.
The State seeks certiorari review of a final order, issued by the Circuit Court sitting in its appellate capacity, affirming a dismissal, by the County Court, of a charge against the respondent of Driving Under the Influence (hereinafter "DUI"). We grant the State's Petition for Certiorari and quash the Circuit Court's order because we find, among other things, that the officer's actions in this case did not amount to a denial of the respondent's due process rights.
Wayne Bock, the defendant below and respondent herein, was arrested for DUI after he failed to perform adequately on a field-sobriety test. After his arrest, the police requested the respondent to submit to a breathalyzer exam. The respondent told the officers that in addition to the breath exam, he would also like to have an independent blood-alcohol exam.[1] A police officer mistakingly represented to the respondent that the cost of receiving such an exam would be somewhere between $250 or $300, and it was later determined the actual cost of the exam was much less. The respondent claims that he did not obtain the independent blood-alcohol examination because the misrepresentations made by the officer caused him to believe that he could not afford this exam.[2] The respondent did eventually submit to a breath-alcohol test; his results were .228 and .235.
The State charged the respondent with DUI. The respondent moved to dismiss the DUI charge, claiming that the police had violated his due process rights by intentionally misrepresentating the cost of the blood-alcohol exam, thereby preventing him from exercising his right to obtain such an exam. At the hearing on this motion, the officer who had made the alleged misrepresentations to the respondent testified that he had mistakingly quoted the cost of the exam to the respondent based on his recollection from prior cases.
Based on this and other testimony, the County Court orally granted the motion to dismiss. In granting the motion, the Court stated as follows:
The Court: State v. Durkee is basically ... on almost all fours as to this particular case ... What concerns the Court is the fact that Mr. Bock did, in fact, ask for a blood test... . However, I don't think the officer was exercising any bad faith in quoting the price. However, by quoting the price and also advising the defendant that he had to come up with the money now. If he didn't have it 
[Prosecutor]: I don't think we have that testimony.
The Court: I think that [the defendant has] implied that he had to and I made notations that he was not sure about that. But he didn't think there was a payment plan or that they took payment plans in and of itself. It could put some doubt, and I feel  it could have put some doubt in the defendant's mind. Specifically, based upon *1198 the fact that he did not want a [breath] test and he had contacted the officer and told the officer that he wanted a blood test... . Therefore, based upon the reading of Durkee,... it is the Court's opinion that the motion to dismiss at this time is going to be granted.
(Hearing on Defendant's Motion to Dismiss, September 8, 1993) (emphasis added). Following this hearing, the trial court issued a written order dismissing the respondent's DUI charge. In that order, the court contradicted its prior ruling by including a finding that the officer had misrepresented the cost of the blood examination to the respondent in "bad faith". The court further noted that it was dismissing the charges against the defendant because the officer's misrepresentations and the defendant's reasonable interpretation thereof amounted to a violation of the defendant's due process rights.
The State then filed a notice of appeal with the appellate division of the Circuit Court. The Circuit Court entered a per curiam affirmance of the County Court's order, citing State v. Durkee, 584 So.2d 1080 (Fla. 5th DCA), cause dismissed, 592 So.2d 682 (Fla. 1991). The State now petitions this Court for certiorari review of the Circuit Court's order. See Fla.R.App.P. 9.030(b)(2)(B).
The defendant contends that this Court should not grant certiorari because the requisite elements for granting such extraordinary relief are not present in the State's petition. The State, on the other hand, contends that certiorari should be granted because the Circuit Court departed from the essential requirements of the law in affirming the County Court's dismissal of the respondent's DUI charge.
As both parties correctly point out, when reviewing a petition for certiorari, we are limited to determining whether the lower court has violated the petitioner's procedural due process rights or has departed from the essential requirements of the law. Haines City Community Dev. v. Heggs, 658 So.2d 523 (Fla. 1995); Education Dev. Ctr., Inc. v. City of West Palm Beach Zoning Bd. of Appeals, 541 So.2d 106 (Fla. 1989); Combs v. State, 436 So.2d 93 (Fla. 1983); City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982); Metropolitan Dade County v. Blumenthal, 20 Fla. L. Weekly D1445, ___ So.2d ___ (Fla. 3d DCA June 21, 1995). In the instant case, the State is not alleging that any procedural due process rights have been violated. Accordingly, our review will be limited to determining whether the Circuit Court departed from the essential requirements of the law when it affirmed the County Court's dismissal of the respondent's DUI charge.
As the Florida Supreme Court originally explained in Combs, courts should guide themselves by the following principles in determining what is a "departure from the essential requirements of the law":
[T]he phrase "departure from the essential requirements of the law" should not be narrowly construed so as to apply only to violations which effectively deny appellate review or which pertain to the regularity of procedure. In granting writs of common-law certiorari, the district courts of appeal should not be as concerned with the mere existence of legal error as much as with the seriousness of the error... . [T]he district courts must be allowed a large degree of discretion so that they may judge each case individually. The district courts should exercise this discretion only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice. It is this discretion which is the essential distinction between review by appeal and review by common-law certiorari.
Combs, 436 So.2d at 95-96 (emphasis added) (citations omitted); see also Haines, 658 So.2d at 525-28.[3] We will now review the Circuit Court's actions, based on the principles delineated in Combs, to determine whether there has been a "violation of a *1199 clearly established principle of law resulting in a miscarriage of justice."
In making this determination, we note that the narrow issue presented under the facts of this case is whether a defendant, who has alleged that the State has wrongfully caused him or her to forego obtaining an independent blood-alcohol examination, must prove that the State has acted in bad faith in order to establish a due process violation. In answering this question, we must look to the obligations placed upon the police, as agents of the State, by the Due Process Clause of the Florida and Federal Constitutions, to preserve evidence which may be, but is not necessarily, helpful to the defendant. We note that we are not dealing with the State's obligation to disclose material and exculpatory evidence to the defendant. Instead, we focus on the State's obligation to preserve evidence which is only potentially exculpatory.
In Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), the United States Supreme Court spoke directly to this issue and provided the following instructive analysis:
We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.

Youngblood, 488 U.S. at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 289 (emphasis added). It follows from the foregoing premise that the Due Process Clause does not "impose on the police an undifferentiated duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Youngblood, 488 U.S. at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 289. Rather, the failure of the police to preserve such evidence, or to allow the defendant to gain access to such evidence, will only amount to a denial of the defendant's due process rights where the police have acted in "bad faith." Youngblood, 488 U.S. at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 289; see e.g., California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). As the court noted in Youngblood, the imposition of a bad faith requirement in cases where the State had allegedly prevented the defendant from seeking potentially exculpatory evidence, as distinguished from exculpatory, material evidence, assures that the courts will only find a violation of due process rights in those cases where "the interests of justice most clearly require it"  i.e., those cases where the actions of the State fundamentally affect the fairness of the proceedings. Youngblood, 488 U.S. at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 289.
In Florida, the First District Court of Appeal in State v. Durkee also addressed this very issue on facts similar to those of the instant case. Durkee involved a situation in which two defendants charged with DUI each requested independent blood-alcohol examinations. In both cases, the police categorically denied each of the defendant's requests. Based on these denials, the defendants each moved to have their charges dismissed and, alternatively, moved to have the results from their breath tests suppressed. As to defendant Durkee, the trial court suppressed the breath results, but did not dismiss the DUI charge. As to defendant Weier, the trial court dismissed the DUI charge, finding that the defendant's due process rights had been violated. In both cases, the Circuit Court held that dismissal was the appropriate sanction, reasoning that the defendants's due process rights had been violated. The State sought certiorari review of the Circuit Court's orders.
The First District, applying the principles set out in Youngblood and Trombetta stated that "[o]nly an affirmative finding of bad faith on the part of the police would warrant a dismissal based on a denial of due process... ." Durkee, 584 So.2d at 1083 (emphasis added) (citing Youngblood and Trombetta). The First District held that the Circuit Court had departed from the essential requirements of the law by concluding that *1200 the police officer's actions had amounted to a denial of the defendants's due process rights without first establishing that the officers had acted in bad faith. Durkee, 584 So.2d at 1083.
We now analyze the instant case in view of the foregoing principles. We find that the County Court's written order is infirm for two reasons, each of which would, independently, mandate a reversal.
First, the trial judge incorrectly applied the relevant case law, particularly the case of State v. Durkee, to the facts in the underlying case. As previously noted, the Court in Durkee concluded that a defendant, who had alleged that the police had violated his due process rights by denying his requests for an independent blood-alcohol test, would have to establish that the police acted in bad faith before a court could find that the defendant's due process rights had, in fact, been violated. Here, the trial court relied on Durkee in dismissing the respondent's DUI charge. However, the record can support no finding other than that the officer was, at worst, innocently incorrect when he advised the respondent regarding the cost of the independent blood exam. In fact, the record is totally devoid of any evidence to establish, indicate, or even suggest, that the police officer intentionally, and in bad faith, misrepresented the price of the independent blood-alcohol test to the respondent. As such, there could be no finding of bad faith on the part of the police in the instant case. Consequently, under the rule enunciated in Durkee, and the other aforementioned federal cases, the respondent's due process rights were not violated. The County Court therefore erroneously relied on Durkee in dismissing the respondent's DUI charge.
Second, the trial judge's written order is at variance with the judge's oral pronouncement at trial regarding the actions of the police officer who misrepresented the cost of the blood examination to the respondent. At the conclusion of the September 8, 1993, hearing, the trial judge specifically stated that he didn't "think the officer was exercising any bad faith in quoting the price." (Hearing on Defendant's Motion to Dismiss, September 8, 1993) (emphasis added). That statement by the trial judge is not only correct, but is the only view that can be taken of the evidence in this case regarding the actions of the police officer. Inexplicably, however, the trial judge's written order reflects a different conclusion regarding the intentions of this police officer. It is well settled that a trial court's written order must generally be reversed where that order is at variance with the court's oral pronouncement. Stevens v. State, 651 So.2d 831 (Fla. 1st DCA 1995); Porras v. State, 651 So.2d 183 (Fla. 3d DCA 1995); Wright v. State, 600 So.2d 548 (Fla. 2d DCA 1992); Henderson v. State, 570 So.2d 1150 (Fla. 1st DCA 1990).
Accordingly, when the State appealed the County Court's order of dismissal to the Appellate Division of Circuit Court, the Circuit Court should have reversed the dismissal for the foregoing reasons; the failure to do so was a violation of clearly established principles of law resulting in a miscarriage of justice. Consequently, we grant the State's Petition for Certiorari and quash the Circuit Court's order of affirmance with directions to the Circuit Court to enter an order reversing the County Court Judge's order. The Circuit Court's order reversing the County Court Judge's order should contain directions to the County Court Judge to deny the defendant/respondent's motion for dismissal of the DUI charge.
Certiorari granted; order quashed, remanded with directions.
NOTES
[1] See Florida Statutes, § 316.1932(1)(f)3. Section 316.1932(1)(f)3 reads, in pertinent part, as follows:

The person tested may, at his own expense, have a physician, registered nurse, other personnel authorized by a hospital to draw blood, or duly licensed clinical laboratory director, supervisor, technologist, or technician, or other person of his own choosing administer a test in addition to the test administered at the direction of the law enforcement officer for the purpose of determining the amount of alcohol in his blood or breath or the presence of chemical substances or controlled substances at the time alleged, as shown by a chemical analysis of his blood or urine, or by chemical or physical test of his breath. The failure or inability to obtain an additional test by a person shall not preclude the admissibility in evidence of the test taken at the direction of the law enforcement officer.
§ 316.1932(1)(f)3, Fla. Stat. (1993).
[2] Interestingly enough, the respondent had $283.56 in his possession at the time of his arrest. Based on the officer's representations regarding the cost of the blood-alcohol examination, it is not altogether clear that the defendant could have reasonably concluded that he did not have sufficient funds to pay for such an examination. Nevertheless, as our opinion makes clear, in deciding whether there has been a due process violation under facts such as those presented in the instant case, we must primarily focus on the officer's conduct; not on the defendant's interpretation of this conduct.
[3] In Haines, the Florida Supreme Court held that the standard for certiorari review enunciated in Combs  i.e., whether the Circuit Court violated a clearly established principle of law resulting in a miscarriage of justice  involved the same scope of certiorari review as with the standard articulated in Education Dev. Ctr.  i.e., whether the Circuit Court applied the correct law. 658 So.2d at 525-31.